## No. 15,412.

### CONYERS *v.* THE PEOPLE.
(155 P. [2d] 988)

Decided January 29, 1945.

Mr. HAROLD J. SPITZER, for plaintiff in error.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAW-RENCE HINKLEY, Deputy, Mr. JAMES S. HENDERSON, Assistant, for the people.

*In Department.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in error, hereinafter referred to as defendant, by verdict returned March 10, 1943 was found not guilty on the first count of an information charging theft of a cow belonging to one Combs, and guilty on the second count charging unlawful killing of the same animal. Thereupon he was sentenced to a term of two to three years in the penitentiary. To review that judgment he prosecutes this writ and assigns six errors: 1. Refusal to disqualify the district attorney; 2. Refusal to declare a mistrial for the admission of improper evidence; 3. Refusal to direct a verdict of not guilty as to the second count of the information; 4. The giving of instruction No. 10; 5. The giving of instruction No. 11;

232

6. The refusal to give defendant's tendered instruction No. 1.

■ 1. The information was filed December 3, 1942. On the same day defendant was arraigned and pleaded not guilty as to the first count, and guilty as to the second. Thereupon he was sentenced to a term of two to three years in the penitentiary. January 9, 1943, on his motion, the judgment was vacated and he was permitted to withdraw his plea of guilty and enter a plea of not guilty. February 27, 1943, defendant filed a motion to disqualify the district attorney because of prejudice. It was overruled on the same day. This motion and the showing in support thereof related only to the subject of probation. Since defendant had not yet been tried and no question of probation was before the court, and for aught anyone then knew never would be, the ruling was clearly correct.

2. After the plea of guilty had been entered and defendant sentenced, the sheriff released certain exhibits in his possession. One of these was a gun which, on information that it had been borrowed by defendant, he returned to the owner. When the sheriff was on the stand as a witness for the people during the trial the following occurred: "Q. (On direct) Was there any reason for returning that gun? A. Yes. Q. What was the reason? A. We received a justice mittimus at the sheriff's office that Mr. Conyers pleaded guilty to the case and no need to hold the evidence any longer. Q. And you returned the evidence back to the owner? A. Yes." Thereupon counsel for defendant objected to the question and answer and asked to be heard in the absence of the jury. The jury was excused and an oral motion made to declare a mistrial. Following argument that motion was denied. Error on that ruling is assigned.

■■ Counsel for defendant must have well known why the sheriff did not have the gun. If so his objection was not timely. He could readily have forestalled the answer in the presence of the jury. Informed of

pending error one may not silently await its arrival and then demand a mistrial. However, a better reason appears why the assignment is not good. The court promptly, fully and vigorously instructed the jury to disregard this statement concerning a plea of guilty except as it explained the people's failure to produce the weapon. When defendant was on the stand in his own behalf his counsel dragged the subject back by asking, "Why did you plead guilty?" The district attorney objected because of the former ruling. Apparently not satisfied with that his counsel asked, "Then you did plead guilty" and defendant answered, "Yes, sir." This elicited another caution of the jury by the court. In his cross-examination of the sheriff counsel for defendant again voluntarily opened up the subject and brought out the fact that defendant had told the witness that "he wanted to plead guilty." Beyond question if there were originally error here the defense, by voluntarily presenting the same fact, cured it. 24 C.J.S., p. 966, §1915; *Moya v. People*, 88 Colo. 139, 293 Pac. 335.

 3. Whether the charge in the second count of the information was brought under section 33, chapter 160, '35 C.S.A., as defendant asserts, or section 93, chapter 48, id., as the attorney general suggests, is immaterial. Said section 33 reads, in part: "Any person who shall * * * knowingly kill * * * *or* in any manner apply to his own use, any neat cattle," etc. The second count of the information charges that defendant did "feloniously kill * * * *and* did feloniously apply to his own use," etc. Defendant contends that his motion for a directed verdict on this count should have been sustained because of lack of evidence of application by defendant to his own use of the carcass. We think there is evidence that he possessed himself of the butchered animal and thus did "apply to his own use." But the statute makes it an offense either to kill or feloniously apply to his own use. If the people charged both and proved but one the charge is still good and

the allegation of application is mere surplusage. The charges might have been made in separate counts and a failure to prove one would not cause the other to fall. The assignment is without merit.

4. Instruction No. 10 advised the jury that drunkenness was no excuse for crime, unless procured by fraud, etc. There is evidence that defendant had done a good deal of drinking prior to shooting the animal in question. But since this was all voluntary, and he had sufficient possession of his faculties to proceed to butcher the cow he had killed, we think the statute particularly applicable to him and his conduct and the instruction correct and necessary.

5. Instruction No. 11 is the usual stock instruction on intent and is correct.

6. Defendant's tendered instruction No. 1 tells the jurors they may consider defendant's intoxication as bearing upon the question of his ability to form an intent. Under the evidence it was wholly improper. It is absurd to suppose that one capable of forming an intent to butcher an animal was too drunk to form an intent to kill it when, as here, the butchering immediately followed the killing.

We now further consider a question strictly arising under No. 1, supra. Defendant was sentenced April 24, 1943. Two days later he renewed his motion to disqualify the district attorney from acting in his official capacity in connection with his application for probation thereupon filed. That motion was sworn to by defendant and supported by the affidavit of his attorney. The showing was uncontradicted. Therefrom it appears that the district attorney had made a "campaign promise" to a certain livestock association that he would not recommend probation in similar cases; that the secretary of said association had written him opposing probation in this case; and that he had stated to defendant's counsel that "he would not even consider the matter of probation unless the said association

would first give its permission therefor." That motion was overruled and that ruling is palpable error. Whether a district attorney recommends or opposes probation involves the exercise of the highest official discretion. If he has none he is incompetent to act. If he has surrendered that official prerogative into private keeping he has definitely abrogated one of his most vital official functions. That conclusion is inescapable.

The judgment is affirmed, but this ruling is reversed and if defendant elects to renew his application for probation the trial court will proceed in harmony herewith.

MR. CHIEF JUSTICE BAKKE and MR. JUSTICE ALTER concur.