24CA1474 Peo v French 05-28-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1474
City and County of Denver District Court No. 22CR5246
Honorable Eric M. Johnson, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jazmine N. French,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE SULLIVAN
Fox and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 28, 2026

Philip J. Weiser, Attorney General, Josiah Beamish, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Robert P. Borquez, Alternate Defense Counsel, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Jazmine N. French, appeals the judgment of conviction entered on a jury verdict finding her guilty of second degree assault. We affirm.

## I.     Background

¶ 2     A jury could have reasonably found the following facts.

¶ 3     In September 2022, French rear-ended the victim, Cecelia Soria, while traffic was at a standstill. After feeling her car get bumped, Soria started recording a video on her cell phone. Soria walked from her car to the back of French's car, recording French's face, car, and license plate. After seeing this, French got out of her car and knocked Soria's phone out of her hand. Soria then pushed French, prompting French to punch her in the face. As French described at trial, the two then engaged in a "big old brawl." A short time later, French's passenger, her daughter, also began fighting with Soria.

¶ 4     The prosecution charged French with second degree assault and first degree contributing to the delinquency of a minor. A jury found French guilty of second degree assault but acquitted her of contributing to the delinquency of a minor. The district court sentenced French to three years of probation with the condition

1

that she enroll in anger management and conflict resolution classes.

¶ 5 French now appeals.

## II. Heat of Passion Jury Instruction

¶ 6 French contends that the district court erred by not instructing the jury on heat of passion, a mitigating factor for second degree assault. She asserts that Soria's push and her video-recording the encounter constituted highly provoking acts that supported French's requested instruction. We disagree.

### A. Applicable Law and Standard of Review

¶ 7 Second degree assault is a class 4 felony. § 18-3-203(2)(b), C.R.S. 2025. But if the defendant commits the assault in a sudden heat of passion, the charge is reduced to a class 6 felony. § 18-3-203(2)(a).

¶ 8 To receive a heat of passion instruction, the defendant must provide evidence that (1) the assault was performed upon a sudden heat of passion; (2) the assault was caused by a serious and highly provoking act of the intended victim; (3) the provoking act was sufficient to excite an irresistible passion in a reasonable person; and (4) between the provocation and the assault, an insufficient

2

amount of time passed for the voice of reason and humanity to be heard. *Id.*; *see People v. Tardif*, 2017 COA 136, ¶ 22 (citing *Cassels v. People*, 92 P.3d 951, 956 (Colo. 2004)). The evidence must "establish that an objectively reasonable person would have similarly suffered an irresistible passion." *People v. Dooley*, 944 P.2d 590, 594 (Colo. App. 1997).

¶ 9     The defendant must present "some credible evidence" in support of each element to receive the instruction. *People v. Oslund*, 2012 COA 62, ¶¶ 15-16 (quoting *O'Shaughnessy v. People*, 2012 CO 9, ¶ 11). We review de novo whether sufficient evidence supported a requested jury instruction. *O'Shaughnessy*, ¶ 13.

### B.     Analysis

¶ 10     For two reasons, we perceive no error in the district court's denial of French's requested heat of passion instruction.

¶ 11     First, Soria's push wasn't a serious and highly provoking act sufficient to satisfy the second required element. *See People v. Ramirez*, 56 P.3d 89, 94 (Colo. 2002) (the victim's refusal of the defendant's marriage proposal, request that the defendant leave, and subsequent push weren't highly provoking acts); *People v. Holloway*, 973 P.2d 721, 724 (Colo. App. 1998) (a push causing the

3

defendant's girlfriend to fall over on a couch wasn't a highly provoking act). Indeed, by the time Soria pushed French, French had *already* instigated physical contact by knocking Soria's phone out of her hand. Given this, French can't claim that Soria's subsequent push provoked her. *Cf. People v. Valdez*, 183 P.3d 720, 723 (Colo. App. 2008) (heat of passion defense inapplicable when the "defendant intentionally put himself in the provoking situation").

¶ 12 Second, we disagree with French that Soria video-recording the incident constituted a serious and highly provoking act. *Cassels*, relied on by the district court when rejecting French's requested instruction, is instructive. 92 P.3d at 957. There, the supreme court concluded that the victim's acts were highly provoking when he followed the defendant around the apartment acting like a "wild man," shoved and "threaten[ed] to beat [the defendant] severely enough to require hospitalization," "positioned himself in front of the only exit . . . next to an iron bar that he previously said would make a good weapon," and insulted the defendant repeatedly. *Id.* The defendant, wearing only a towel, was in a "highly vulnerable position." *Id.*

4

¶ 13 In contrast to the defendant in *Cassels*, French had no reason to believe Soria had a weapon or intended to hurt her. Moreover, Soria didn't threaten French or act in a wild manner. And French wasn't in a highly vulnerable position. While Soria approaching and recording French may have been unwelcome, that doesn't transform her behavior into a highly provoking act that will support a heat of passion instruction. *See People v. Sepulveda*, 65 P.3d 1002, 1005, 1007 (Colo. 2003) (victim's "decision to appear where he allegedly knew he was unwelcome" wasn't a highly provoking act).

¶ 14 Even if we assumed that video-recording a person after a car accident could constitute a highly provoking act, we conclude on this record that it still wasn't sufficient to excite an irresistible passion in an objectively reasonable person. *See Tardif*, ¶ 22. Absent other circumstances not present here, an objectively reasonable person wouldn't engage in a physical fight merely because the victim recorded them after a fender bender. *See Sepulveda*, 65 P.3d at 1007 (concluding as a matter of law that a victim's unwelcome presence, without more, wouldn't excite the passion of a reasonable person); *see also Holloway*, 973 P.2d at 724

5

(testimony that the defendant and victim were "arguing like they were about to fight" didn't establish provocation sufficient to excite an irresistible passion in a reasonable person).

¶ 15     Accordingly, we perceive no error in the district court's decision rejecting French's requested heat of passion instruction.

### III.    Limits on Cross-Examination

¶ 16     French contends that the district court erred by limiting her cross-examination of Soria in violation of CRE 611(b), the Confrontation Clause, and the party presentation principle. We aren't persuaded.

### A.    Additional Background

¶ 17     At trial, the prosecution admitted a bystander's video of the altercation. During Soria's testimony, the prosecution played segments of the video and questioned her about her actions and observations during the fight. Defense counsel cross-examined Soria about the video — specifically, about the movements of French's daughter during the altercation. During this questioning, the following exchange occurred:

> [DEFENSE COUNSEL]: And then [French's daughter] moves from the passenger side of

[French's] car to the driver's — to the driver's side.  Right?

[SORIA]: I don't know.

[DEFENSE COUNSEL]: I'm going to approach you with that video, People's Exhibit 1, and without any audio I'm just going to show you a brief clip on my computer.

THE COURT: I'm sorry.  You're republishing?

[DEFENSE COUNSEL]: No.  I'm just showing Ms. Soria.

THE COURT: Counsel, what is it you think you're doing?  She didn't say she doesn't remember, so you're not refreshing recollection.  She says she doesn't know, so she's unaware exactly what happened.

[DEFENSE COUNSEL]: She said she did not remember, Your Honor.

THE COURT: She said, "I don't know."  And the exhibit speaks for itself.

[DEFENSE COUNSEL]: So, Your Honor, Ms. French has a right to cross-examine —

THE COURT: Counsel approach.

(Discussion at the bench.)

THE COURT: Counsel, you're not going to be able to get into this.  The reason she doesn't remember is because she's gotten punched and she's in the middle of a fight.  She did not see this part.  She said, "I don't know."  You're not refreshing recollection.  You're not impeaching.  You're having her comment on an

7

exhibit which speaks for itself. The jury can see it.

[DEFENSE COUNSEL]: Your Honor, she — on direct examination she had the opportunity to go through this exhibit piece by piece with the district attorney, and Ms. French should have the opportunity to then cross-examine her piece by piece about this exhibit that she was questioned about on direct.

THE COURT: She said she didn't know. Move on.

After a recess, defense counsel questioned Soria about screenshots from the video, showing the movements of French's daughter during the altercation.

## B.   CRE 611(b)

¶ 18    French contends that the district court erred by limiting cross-examination, in violation of CRE 611(b), because the prosecution questioned Soria about the video during her direct examination.

### 1.    Applicable Law and Standard of Review

¶ 19    CRE 611(b) limits cross-examination to the "subject matter of the direct examination and matters affecting the credibility of the witness." But the rule must "be liberally construed to permit cross-examination on any matter germane to the direct

8

examination, qualifying or destroying it, or tending to elucidate, modify, explain, contradict, or rebut testimony given by the witness." *People v. Sallis*, 857 P.2d 572, 574 (Colo. App. 1993).

¶ 20   Nevertheless, a trial court has broad discretion to limit cross-examination based on concerns about prejudice, confusion of the issues, repetitiveness, and relevance. *People v. Conyac*, 2014 COA 8M, ¶ 97. Unless the court's restriction is so severe as to constitute a denial of the right to cross-examine the witness, the extent to which cross-examination should be allowed falls within the court's discretion. *Id.*

¶ 21   We review a trial court's limits on cross-examination for an abuse of that discretion. *Id.* at ¶ 91.

### 2.   Analysis

¶ 22   We perceive no abuse of discretion under CRE 611(b) in the district court's limitation on French's cross-examination of Soria. The court restricted inquiry on only one topic — the location of French's daughter during the altercation. That narrow restriction fell within the district court's broad discretion. When Soria didn't know the answer to defense counsel's question, there was nothing

9

for defense counsel to impeach or refresh through the bystander's video recording.

¶ 23   Moreover, defense counsel *did* elicit testimony from Soria about the location of French's daughter while introducing screenshots of the video.  Thus, the court's limit on cross-examination wasn't so severe as to constitute a denial of French's right to cross-examine Soria.  *See Conyac*, ¶ 97.

## C.   Confrontation Clause

¶ 24   French contends that the district court's limitation on her cross-examination of Soria violated her constitutional right to confront the witnesses against her.

### 1.   Applicable Law and Standard of Review

¶ 25   The Confrontation Clauses of the United States and Colorado Constitutions guarantee a criminal defendant's right to cross-examine prosecution witnesses.  U.S. Const. amend. VI; Colo. Const. art. II, § 16; *People v. Campos*, 2015 COA 47, ¶ 27.  A court may not "limit excessively a defendant's cross-examination of a witness regarding the witness' credibility, especially cross-examination concerning the witness' bias, prejudice, or

motive for testifying." *Campos*, ¶ 27 (quoting *Merritt v. People*, 842 P.2d 162, 167 (Colo. 1992)).

¶ 26    "The question in determining whether a restriction on cross-examination runs afoul of the constitutional right of confrontation is whether a 'reasonable jury might have received a significantly different impression of a witness's credibility had the court not erroneously excluded otherwise appropriate evidence.'" *People v. Dunham*, 2016 COA 73, ¶ 40 (quoting *Krutsinger v. People*, 219 P.3d 1054, 1061 (Colo. 2009)).

¶ 27    We review de novo whether a trial court violated a defendant's Confrontation Clause rights. *People v. Carter*, 2015 COA 24M-2, ¶ 28. But because French didn't raise the constitutional right to confront witnesses as a basis for allowing her requested cross-examination, our review is limited to plain error. *See People v. Jaeb*, 2018 COA 179, ¶¶ 8-9 (evidentiary objection insufficient to preserve Confrontation Clause claim); *Campos*, ¶ 29 (defining plain error).

2.    Analysis

¶ 28    We discern no error under the federal or state Confrontation Clauses, plain or otherwise, in the district court's narrow limitation

11

on French's cross-examination of Soria. The court didn't prevent French from asking Soria about her perceptions of the movements of French's daughter. Soria answered the question by saying she didn't know, prompting the court to direct French to "[m]ove on."

¶ 29     But even if the court had prevented French's questions, its restriction didn't relate to Soria's credibility, bias, prejudice, or motive for testifying. *See Carter*, ¶ 36 (rejecting Confrontation Clause challenge, in part, because the defense's requested cross-examination "had little, if any, bearing on [the witness]'s bias, motives, or credibility as a witness"); *Campos*, ¶ 38 (concluding that the court's limit on cross-examination didn't violate the Confrontation Clause where the excluded questions didn't relate to the witness's "bias, prejudice, or motive for testifying"). To the contrary, defense counsel was still able to effectively cross-examine Soria on topics bearing on her credibility, including the lack of damage to her car and her incomplete communications with the prosecution and law enforcement.

¶ 30     Accordingly, the court's limit on French's cross-examination of Soria didn't prevent the defense from eliciting testimony that would

have given the jury a "significantly different impression" of Soria's credibility.  *Dunham*, ¶ 40 (quoting *Krutsinger*, 219 P.3d at 1061).

### D.    Party Presentation Principle

¶ 31    French contends that the district court erred by sua sponte limiting her cross-examination of Soria, violating the party presentation principle.

### 1.    Applicable Law and Standard of Review

¶ 32    The party presentation principle requires a court to rely "on the parties to frame the issues to be decided and assigns to courts the role of neutral arbiters of the matters raised."  *Galvan v. People*, 2020 CO 82, ¶ 45.  The principle is "supple, not ironclad."  *People v. Lulei*, 2026 CO 17, ¶ 30 (quoting *United States v. Sineneng-Smith*, 590 U.S. 371, 376 (2020)).  "There are no doubt circumstances in which a modest initiating role for a court is appropriate."  *Sineneng-Smith*, 590 U.S. at 376.

¶ 33    Under CRE 611(a), the trial court must "exercise reasonable control" over the interrogation of witnesses to "(1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."

13

¶ 34    We review a trial court's alleged deviation from the party presentation principle for an abuse of discretion. *Sineneng-Smith*, 590 U.S. at 375. Because French didn't raise the party presentation principle before the district court, our review is again limited to plain error. *See Campos*, ¶ 29.

## 2.    Analysis

¶ 35    We perceive no error under the party presentation principle, let alone plain error, in the district court's limitation on French's cross-examination of Soria. As with French's CRE 611(b) argument, Soria's answer of "I don't know" when asked about the movements of French's daughter meant that there was nothing for defense counsel to impeach or refresh through the bystander's video recording. When defense counsel nonetheless persisted with the same line of questioning, the court acted within its broad discretion under CRE 611(a) by instructing counsel to move on to a different topic. *See People v. Hendrickson*, 45 P.3d 786, 788 (Colo. App. 2001) (a trial court "must exercise its discretion to preclude inquiries that have no probative value, are irrelevant, or are prejudicial").

14

¶ 36 French doesn't point us to any authority suggesting that the party presentation principle overrode the court's responsibility under CRE 611(a) to exercise reasonable control over the presentation of evidence. And since the party presentation principle isn't "ironclad," *Lulei*, ¶ 30 (quoting *Sineneng-Smith*, 590 U.S. at 376), we decline to apply it in a manner that would inhibit the court from exercising its considerable discretion to secure the effective interrogation of witnesses and avoid the needless consumption of time. *See* CRE 611(a); *cf. Lucero v. People*, 2017 CO 49, ¶ 26 (the party presentation principle doesn't "prevent a court from properly characterizing an issue that has been improperly characterized by a party").

¶ 37 Accordingly, the district court didn't err under the party presentation principle by limiting French's cross-examination of Soria.

## IV. Authentication

¶ 38 French contends that the district court erred by admitting a video of the altercation that wasn't properly authenticated. We disagree.

## A.  Additional Background

¶ 39    Before trial, French moved in limine to exclude a video of the altercation that the prosecution planned to introduce through a bystander, N.H.  French argued that N.H. couldn't authenticate the video because he witnessed the altercation from a different angle than the person who recorded the video.  Although French stipulated to the video being introduced through another witness, she didn't want the prosecution to introduce the video through N.H.  The district court denied French's motion.

¶ 40    At trial, N.H. testified that he was driving in the opposite direction as Soria and French when he witnessed their altercation.  N.H. explained that he witnessed "all" of the interaction, except "the initial contact between the two cars."  After the altercation ended and French drove away, N.H. pulled his car over to the side of the road and ran over to see if Soria needed medical attention.  Another witness who stayed on scene, a truck driver, had recorded the incident.  N.H. asked the truck driver for a copy of the video.  The prosecution moved to admit the video into evidence during N.H.'s testimony.

¶ 41 After voir dire, defense counsel reraised her pretrial objection to N.H.'s authentication of the video. The court overruled the objection and admitted the video. The prosecution played the video but didn't question N.H. about it.

### B. Applicable Law and Standard of Review

¶ 42 The proponent of physical evidence must authenticate the evidence to admit it at trial. *See* CRE 901(a). Authentication requires "evidence sufficient to support a finding that the matter in question is what its proponent claims." *Id.* The burden of authentication is "minimal — all that's required is a prima facie showing that the evidence is what its proponent claims." *Gonzales v. People*, 2020 CO 71, ¶ 42. Evidence is admissible under CRE 901(a) if "the proponent has offered a satisfactory foundation from which the jury could reasonably find that the evidence is authentic." *Gonzales*, ¶ 27 (quoting *People v. Glover*, 2015 COA 16, ¶ 13). Once the proponent meets this prima facie burden, authenticity is a question for the jury. *Id.* at ¶ 6; *see People v. Brown*, 313 P.3d 608, 614 (Colo. App. 2011) ("Any question as to the authenticity of evidence is properly decided by the jury.").

¶ 43 CRE 901 doesn't prescribe an exclusive method for authenticating evidence. *Gonzales*, ¶ 30. Rather, it contemplates a "flexible, fact-specific inquiry," *id.* at ¶ 5, and "vests trial courts with broad discretion to consider a variety of foundational circumstances depending on the nature of the proffered evidence," *id.* at ¶ 30. "To authenticate a video recording, the proponent needs to establish that the recording is an accurate reproduction of a scene with which the witness is familiar." *People in Interest of M.V.*, 2018 COA 163, ¶ 51, *overruled in part on other grounds by, People in Interest of E.A.M. v. D.R.M.*, 2022 CO 42.

¶ 44 We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Gonzales*, ¶ 25. "A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair." *Id.* (quoting *Campbell v. People*, 2019 CO 66, ¶ 21).

### C. Analysis

¶ 45 The district court didn't abuse its discretion in overruling French's objection to N.H.'s authentication of the video. N.H.'s testimony that the recording accurately captured the scene he witnessed was sufficient foundation for the court to admit the recording into evidence. *See M.V.*, ¶ 51.

¶ 46 French's argument that N.H. couldn't authenticate the video because he viewed the altercation from a different angle doesn't convince us otherwise. After the prosecution met its prima facie burden, any question about the video's authenticity — either because N.H. observed the altercation from a different angle than the truck driver who recorded it, or for any other reason — became an issue for the jury to decide. *See Brown*, 313 P.3d at 614; *see also People v. N.T.B.*, 2019 COA 150, ¶ 16 (once a proponent of evidence meets its prima facie burden, questions about authenticity "go to the weight of evidence and not its admissibility"). In addition, defense counsel thoroughly cross-examined N.H. regarding his viewing angle, inconsistencies in his recollection, and the differences between his version of events and what the video depicted.

¶ 47 Accordingly, we discern no abuse of discretion in the district court's admission of the video.

## V. Cumulative Error

¶ 48 French contends that, even if none of her contentions of error individually warrants reversal, their cumulative effect does. To warrant reversal under the cumulative error doctrine, a reviewing

court must identify multiple errors that collectively prejudiced the defendant's substantial rights. *Howard-Walker v. People*, 2019 CO 69, ¶ 25. Because we haven't identified any errors, the cumulative error doctrine isn't implicated. *People v. Jones*, 2025 COA 43, ¶ 56 (*cert. granted* Jan. 20, 2026).

## VI. Disposition

¶ 49 We affirm the judgment.

JUDGE FOX and JUDGE KUHN concur.